**Shirley RYAN, Plaintiff,**

v.

**GENERAL MACHINE PRODUCTS, Defendant.**

**Civil Action No. 02–1281.**

United States District Court, E.D. Pennsylvania.

Aug. 21, 2003.

Elizabeth O'Connor Tomlinson, Martha Sperling, Silver & Sperling, Doylestown, PA, Plaintiff.

Jessica L. Krentzman, Mary E. Kohart, Michael C. Kochkodin, Drinker Biddle & Reath LLP, Philadelphia, PA, for Defendant.

## MEMORANDUM

BAYLSON, District Judge.

This case arises out of allegations made by plaintiff Shirley Ryan ("Plaintiff") against defendant General Machine Products ("GMP" or "Defendant"), that she had been sexually harassed by a supervisor, Gary Miller, during August 2001. Defendant's Motion for Partial Summary Judgment is not directed to that harassment claim but rather to Plaintiff's claims regarding gender discrimination in training, promotions, and equal pay under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e; the Pennsylvania Human Relations Act, 43 PA. STAT. ANN. § 951 et seq.; the Equal Rights Amendment of the Pennsylvania Constitution, art. 1 § 28; and the Equal Pay Act, as amended, 29 U.S.C. § 621 et seq. The Court heard oral argument on May 9, 2003. For the reasons that follow, Defendant's Motion will be granted in part and denied in part.

## I. Background

GMP designs, builds, assembles, and distributes telecommunication and utility construction tools and equipment and currently employs 101 full-time employees. (O'Reilly Aff. ¶ 3, Def.'s Mot. Partial Summ. J., Ex. A). GMP is composed of five departments including manufacturing, finance, purchasing, engineering, and sales/marketing. Id. ¶ 4.

GMP hired Plaintiff as an hourly production assistant in August 1978. (Ryan Employment Chart, Pl.'s Resp. Def.'s Mot. Partial Summ. J., Ex. G). During her employment with GMP, Plaintiff has worked in numerous manufacturing areas, but at the time of the conduct alleged in her internal sexual harassment complaint, she was working in the lasher assembly department. (Pl.'s Resp. Def.'s Mot. Partial Summ. J. at 9).

On August 14, 2000, Plaintiff complained to William Pfundt, GMP's chief executive officer and president, that a supervisor, Gary Miller, had sexually harassed her, and then assigned her to the milling department after she informed Miller that she did not want to be romantically involved with him. (Memorandum from Bill Pfundt to Kevin O'Reilly, Def.'s Mot. Partial Summ. J., Ex. C). Shortly thereafter, GMP hired an independent investigator, who determined that Miller's conduct did constitute sexual harassment but that Plaintiff still was able to perform her tasks as efficiently as before. (Marcus Report, Def.'s Mot. Partial Summ. J., Ex. E). Plaintiff was transferred back to the lasher assembly department. (O'Reilly Aff. ¶ 3, Def.'s Mot. Partial Summ. J., Ex. A).

On November 14, 2000, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the Pennsylvania Human Relations Commission ("PHRC"). (EEOC Discrimination Charge, Def.'s Mot. Partial Summ. J., Ex. I). In that charge,

Plaintiff alleged GMP did not appropriately handle her complaint against Miller; that she was paid less than male employees for similar work; and that she had been passed over for a promotion within the last six months. *Id.*

On March 11, 2002, Plaintiff filed the instant Complaint alleging that GMP violated Title VII of the Civil Rights of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Pennsylvania Human Relations Act, 43 PA. STAT. ANN. § 951 *et seq.* ("PHRA") by discriminating against her based on her sex, allowing quid pro quo sexual harassment by creating a hostile work environment, and paying her less because of her sex. (Pl.'s Compl. ¶¶ 31–34). Plaintiff's Complaint also alleges that GMP violated the Equal Rights Amendment of the Pennsylvania Constitution, art. I § 28 ("PERA") by discriminating against Plaintiff on the basis of her sex, and the Equal Pay Act, 29 U.S.C. § 206 *et seq.* ("EPA") by paying Plaintiff less than males doing the same job. *Id.* ¶¶ 35–38.

## II. Legal Standard and Jurisdiction

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* A party seeking summary judgment always

bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

This Court has subject matter jurisdiction over the claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Venue is appropriate under 28 U.S.C. § 1391(b).

## III. Discussion

### A. Title VII and the PHRA[1]

### 1. Timeliness of Plaintiff's Claims

In the first set of interrogatories, GMP asked Plaintiff to identify "each and every

---

**1.** The analysis required to adjudicate Plaintiff's claim under the PHRA is identical to a Title VII inquiry. *Goosby v. Johnson & Johnson Medical Inc.,* 228 F.3d 313, 317 n. 3 (3d Cir.2000) (citing *Jones v. School District of Philadelphia,* 198 F.3d 403, 410–11 (3d Cir.

promotion for which plaintiff contends she was 'passed over' as alleged in Paragraph 13 of the Complaint." In response, Plaintiff listed five promotions, as set forth below, with her own dates and job descriptions, some of which vary from GMP's records:

1. Plaintiff alleges that Kenny Erhart was promoted to parts manager in May 1989; GMP alleges that Erhart was hired as a department leader in the parts department in May 1989 and promoted to material control supervisor in January 1990;

2. Plaintiff claims that Ed Trasatti was promoted to supervisor of shipping/parts in 1990; GMP claims that Trasatti was promoted to receiving/parts supervisor in August 1995;

3. Plaintiff asserts that Randy Holcroft was promoted to department leader/lasher in 1994; GMP asserts that Holcroft was promoted in October 1989;

4. Plaintiff alleges that Ken MacHugh was promoted to department leader/lasher in June 1999; GMP alleges that MacHugh was promoted in October 1993;

5. Plaintiff claims that Frank Koby and Sean O'Grady were promoted to production supervisors in January 2002; GMP does not dispute this.

(Pl.'s Resp. Def.'s First Set Interrog., Def.'s Mot. Partial Summ. J., Ex. J; O'Reilly Aff. ¶¶ 12, 14–16, Def.'s Mot. Partial Summ. J., Ex. A).

Under Title VII, a plaintiff must file with the EEOC or its state or local equivalent within 300 days of the alleged actions or practice that constitutes illegal discrimination. *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir.1995); 42 U.S.C. § 2000e–5(e).[2] This filing is a prerequisite to a civil suit under Title VII. *Id.* To bring a suit under the PHRA, Pennsylvania law requires that a plaintiff first file an administrative complaint with the PHRC within 180 days of the alleged act of discrimination. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir.1996); 43 PA. STAT. ANN. §§ 959(a), 962. Because the federal period is longer, if a claim is untimely under Title VII, it will also be considered untimely under the PHRA.

■ Plaintiff had 300 days from the time of each allegedly discriminatory failure to promote in which to file her charge under Title VII and 180 days from the time of the promotions in which to file her charge under the PHRA. Plaintiff filed her charge of discrimination with the EEOC on November 14, 2000, where it was deemed cross-filed with the PHRC. (Pl.'s Compl. ¶ 14). Therefore, alleged acts of discrimination that occurred before January 18, 2000 are time-barred under Title VII, and alleged acts of discrimination that occurred before May 18, 2000 are time-barred under the PHRA.

The first four promotions identified by Plaintiff, using either Plaintiff's or GMP's alleged time of promotion, are indisputably time-barred under Title VII and the PHRA.

Plaintiff further alleges that her failure to promote claim also includes her allega-

---

1999)). Therefore, Plaintiff's claims under the PHRA will not be separately addressed.

**2.** 42 U.S.C. § 2000e–5(e) states, in relevant part:

A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ... except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief ... such charge shall be filed ... within three hundred days after the alleged unlawful employment practice occurred....

tion that she was not promoted from a Level C employee to a Level A employee until November 2000. According to her deposition, Plaintiff claimed that she should have received her promotion to Level A years before she actually received it. (Ryan Dep. at 15, Pl.'s Resp. Def.'s Mot. Partial Summ. J., Ex. A). Company records show that Plaintiff was promoted to Level B in 1985, and promotion to Level B was a necessary prerequisite to promotion to Level A. (Pl.'s Resp. Def.'s Mot. Partial Summ. J., Ex. G). This claim also is time-barred.

### 2. Continuing Violation Theory

■ Although the limitations periods apply generally, the Supreme Court has recognized that they do not apply in all situations. If a plaintiff has difficulty identifying precisely when the illegal conduct occurred or a violation is continuous and ongoing, the filing prerequisite of a Title VII action is "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). The continuing violation theory is an equitable exception that allows a plaintiff to "pursue a Title VII claim for discriminatory conduct that began prior to the filing period if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant." *West*, 45 F.3d at 754. In order to successfully present a continuing violation claim, the plaintiff must demonstrate that: (1) at least one discriminatory act occurred within the actual filing period and (2) the discrimination did not consist of "isolated, intermittent acts of discrimination," but instead of a "persistent, on-going pattern." *Id.* at 754–55. Once a plaintiff has demonstrated a continuing violation, he or she may recover for discriminatory conduct that occurred prior to the filing period and offer evidence of all events that constitute the violation.

*Id.* at 755. If the plaintiff does not establish a continuing violation, he or she may recover only for the conduct within the applicable statutory period.

■ The Third Circuit has enumerated factors relevant to determining whether or not a continuing violation exists, including the subject matter of the various incidents, the frequency with which they occurred, and "their degree of permanence." *Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 482 (3d Cir.1997). When the alleged actions of the defendant are of the type that should trigger "an employee's awareness of and duty to assert his or her rights," then there is less likelihood that a continuing violation has occurred. *Id.* (quoting *Berry v. Board of Supervisors of Louisiana State Univ.*, 715 F.2d 971, 981 (5th Cir.1983)).

■ In the instant case, Plaintiff attempts to use the continuing violation theory to save her time-barred claims. However, the Supreme Court and the Third Circuit have held that promotions are isolated, discrete incidents as to which the continuing violation theory rarely, if ever, applies.

In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 105, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), the plaintiff, a black male, filed racial discrimination and retaliation charges with the EEOC and cross-filed with the state agency. Although some of the allegedly discriminatory acts about which the plaintiff complained occurred within 300 days of the time that he filed his charge, many took place prior to that period. *Id.* at 106, 122 S.Ct. 2061. The defendant employer moved for summary judgment on all alleged incidents that occurred more than 300 days before the filing of the plaintiff's EEOC charge. *Id.* The district court granted partial summary judgment for the defendant, the Ninth Circuit reversed, and the Supreme Court reversed again, rein-

stating the district court's decision. *Id.* at 106–08, 122 S.Ct. 2061. The Supreme Court stated that the plaintiff's claims were time-barred as to each discrete act of "termination, failure to promote, denial of transfer, or refusal to hire." *Id.* at 114–15, 122 S.Ct. 2061. Such allegedly discriminatory acts are easy to identify, each "incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice,'" and each must be complained about within the statutory period. *Id.* at 114, 122 S.Ct. 2061.

Plaintiff in the instant case has listed five different promotions for which she claims she was passed over on the basis of her sex. However, the first four promotions occurred outside the limitations period, and she cannot link them as continuing violations because they involve different positions in different parts of GMP's manufacturing facility, from lasher to shipping parts. They also are distinct because they involve promotions to different levels of supervision, from department leader to production supervisor. These promotions, which occurred over at least a 12–year period, also call for people with different skills. These promotion decisions should have triggered Plaintiff to assert her rights. She knew of the promotions when they happened, and she knew whether she believed she was as qualified for the positions as the male employees who received them. If she had wanted to challenge these alleged discriminatory failures to promote, she was required timely to file charges with the EEOC or the PHRC.

Her failure to do so was fatal, and these stale claims cannot be resuscitated by the continuing violation theory.

### 3. Failure to Train Claims

█ GMP points out in its reply brief that Plaintiff never raised her failure to train claim in her EEOC complaint. (Def.'s Reply Br. at 2). Indeed, the issue of promotion and pay disparity is barely mentioned.[3] The word "training" is not mentioned by Plaintiff in her EEOC charge, the questionnaire completed for the EEOC, or in her attorney's letter to the EEOC describing Plaintiff's claims.[4] (EEOC Discrimination Charge, Def.'s Mot. Partial Summ. J., Ex. I; Answers to EEOC Questionnaire, Counsel's Letter to EEOC, Def.'s Reply Br., Exs. W, Y). None of these documents suggest that Plaintiff failed to receive pay increases and promotions because she did not receive the same training given to male employees.

█ Both Title VII and the PHRA require aggrieved employees to file a charge that puts their employers on notice of the claims against them. This exhaustion requirement is so essential to the purposes of Title VII and the PHRA that federal courts cannot hear claims of workplace discrimination that a plaintiff did not first assert as part of his or her EEOC charge. *Oliphant–Johns v. City of Philadelphia*, No. CIV.A.01–2578, 2002 WL 31819630, at *3 (E.D.Pa. Dec. 13, 2002) (citing *Mroczek v. Bethlehem Steel Corp.*, 126 F.Supp.2d 379, 384 (E.D.Pa.2001)). Before a claim can be exhausted, it must have been included in the plaintiff's charge

---

**3.** Plaintiff's EEOC charge recites Plaintiff's harassment allegations against Gary Miller and then states: "I am paid less than the male employees for similar work. I was [sic] over for promotion within last six months—the jobs are given to men." (EEOC Discrimination Charge, Def.'s Mot. Partial Summ. J., Ex. I). Plaintiff's Complaint in the instant case fails to mention the word "training."

**4.** Despite Plaintiff's counsel's insistence to the contrary, failure to train is not mentioned in her letter to the EEOC responding to the EEOC's request for more information. Although her letter discusses Defendant's alleged failure to promote Plaintiff, there is no discussion of failure to train. (*See* Def.'s Reply Br. Supp. Summ. J., Exs. X, Y).

with the administrative agency. *Oliphant–Johns*, 2002 WL 31819630 at *3.

■ The test for determining if a plaintiff properly exhausted is whether the facts alleged in the subsequent Title VII action are fairly within the scope of the prior EEOC complaint or the investigation arising therefrom. *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir.1996). Plaintiff's written charge before the EEOC clearly shows that her training claims were not raised before that agency. (EEOC Discrimination Charge, Def.'s Mot. Partial Summ. J., Ex. I). The training claims were not raised as part of the EEOC investigation, and neither she nor her attorney mentioned training in their submissions to the EEOC. (Answers to EEOC Questionnaire, Counsel's Letter to EEOC, Def.'s Reply Br., Exs. W, Y).

The results of the EEOC's investigation establish that its examination of Plaintiff's claims did not involve training issues. In its May 3, 2001 letter to Plaintiff, the EEOC concluded:

> In regards to your allegation(s) that you are being paid less than male employees for doing similar work and that you were passed over for promotion, the evidence does not support the claim(s).
>
> Respondent contends, and the evidence shows, you received a promotion on or about November 13, 2000 from Assembler B to Assembler A along with a substantial pay increase. Prior to November of 2000, a comparison of your hourly rate with that given for your male peers in the same job classification, e.g., Grade H6–Assembler B, evinced the hourly Grade Average rate for the

male employees was approximately $12.06. At that time, your hourly rate was approximately $15.76. After your promotion, a comparison of your hourly rate for that given for your male peers in the Grade H4–Assembler A job classification evinced that the hourly Grade Average rate for the males was approximately $16.64. At this time, your hourly rate was approximately $17.00.

(Letter from EEOC Investigator, Def.'s Reply Br., Ex. X). In this letter, the EEOC asked Plaintiff to inform it if she had any further information that it had not considered in reaching its conclusion that she had not presented evidence to support her pay equality and failure to promote claims. *Id.* Plaintiff's attorney responded with a letter that did not mention training. (Counsel's Letter to EEOC, Def.'s Reply Br., Ex. Y).

By not filing a charge with the EEOC, Plaintiff has failed to exhaust her training claims, and they cannot be the subject of her claim in this litigation.

■ Similarly, Plaintiff's fifth specific promotion claim, regarding Frank Koby's and Sean O'Grady's promotions to production supervisors in January 2002, occurred more than a year after she filed her EEOC charge and has not been the subject of a subsequent EEOC filing.[5] Plaintiff did not exhaust her administrative remedies regarding this claim, and therefore it cannot be the subject of this litigation.

### B. Pennsylvania Equal Rights Amendment[6]

■ Plaintiff also sues under the PERA, which provides that "[e]quality of

---

**5.** Plaintiff stated in her deposition that she "didn't feel [she] was qualified for either of those jobs." (Ryan Dep. at 85, Pl.'s Resp. Def.'s Mot. Partial Summ. J., Ex. A).

**6.** The PERA does not have a specific statute of limitations governing actions against a private

individual or entity. GMP likens an action brought under the PERA to a 42 U.S.C. § 1983 claim because a § 1983 claim involves allegations that a plaintiff has suffered an injury from the violation of his or her constitutional rights, often because of his or her membership in a protected class. (Def.'s Br.

rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual." PA. CONST. art. I, § 28.

 The Supreme Court of Pennsylvania has not ruled on the issue of whether there is a private cause of action for damages under the state constitution, and the federal courts in this Circuit that have considered the issue have concluded that there is no such right under the Pennsylvania Constitution. *Douris v. Schweiker,* 229 F.Supp.2d 391, 405 (E.D.Pa.2002) (citing *Kelleher v. City of Reading,* No. 01–3386, 2001 WL 1132401, at *2–3, 2001 U.S. Dist. LEXIS 14958, at *9–10 (E.D.Pa. Sept. 24, 2001) (citing *Dooley v. City of Philadelphia,* 153 F.Supp.2d 628, 663 (E.D.Pa.2001)); *Sabatini v. Reinstein,* No. 99–2393, 1999 WL 636667, at *3, 1999 U.S. Dist. LEXIS 12820, at *6 (E.D.Pa. Aug. 20, 1999); *Holder v. City of Allentown,* No. 91–240, 1994 WL 236546, *3, 1994 U.S. Dist. LEXIS 7220, at *11 (E.D.Pa. May 19, 1994); *Lees v. West Greene Sch. Dist.,* 632 F.Supp. 1327, 1335 (W.D.Pa.1986); *Pendrell v. Chatham Coll.,* 386 F.Supp. 341, 344 (W.D.Pa.1974)). Therefore, Plaintiff's claims under the PERA fail as a matter of law.

## C. Equal Pay Act[7]

### 1. Timeliness

 Claims arising under the EPA must be filed within two years of accrual of the cause of action, except in cases of willful violations, in which the limitations period is three years. *Miller v. Beneficial Management Corp.,* 977 F.2d 834, 842 (3d Cir.1992). Plaintiff alleges sex-based pay discrimination far beyond the two-year limitations period. Therefore, the Court must determine whether the continuing violation theory, discussed *supra* Part III. A.2, saves Plaintiff's disparate pay claims. *See Cardenas v. Massey,* 269 F.3d 251, 258 (3d Cir.2001) ("[A]pplication of the continuing violations doctrine is not dependent on which statute gives rise to the plaintiff's claim.") (citing *Brinkley–Obu v. Hughes Training, Inc.,* 36 F.3d 336, 345–51 (4th Cir.1994) (applying continuing violation theory to both Title VII and EPA disparate pay claims)).

 The Third Circuit has found that "[s]ex-based, discriminatory wage payments constitute a continuing violation of the Equal Pay Act.... To hold otherwise would permit perpetual wage discrimination by an employer whose violation of the Equal Pay Act had already lasted

Partial Summ. J. at 11). A PERA claim based directly on the Pennsylvania Constitution alleges the same violation of rights. *Id.* Therefore, GMP argues that the PERA statute of limitations should be governed by the limitations period applied to personal injury actions. *Id.*

The Supreme Court has held that § 1983 claims are governed by each state's statute of limitations for personal injury actions. *Wilson v. Garcia,* 471 U.S. 261, 269, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Federal courts addressing § 1983 claims in Pennsylvania apply Pennsylvania's two-year statute of limitations governing personal injury actions. *See Knoll v. Springfield Twp. School Dist.,* 763 F.2d 584, 585 (3d Cir.1985); 42 PA. CONS.STAT. ANN. § 5524(2) (establishing a two-year stat-

ute of limitations in actions to recover damages for injuries to the person).

At oral argument, Plaintiff agreed with Defendant that a two-year statute of limitations period should apply. Therefore, the Court applies a two-year statute of limitations to Plaintiff's PERA claims.

7. A violation of the EPA constitutes a violation of Title VII, making a *prima facie* showing of an EPA claim also a *prima facie* showing of a Title VII violation. *Miller v. Beneficial Management Corp.,* 977 F.2d 834, 846 (3d Cir.1992). A *prima facie* violation of Title VII also would constitute a *prima facie* violation of the PHRA. *See Goosby,* 228 F.3d at 317 n. 3.

without attack for over two years. *Cardenas,* 269 F.3d at 257 (quoting *Miller,* 977 F.2d at 843) (quoting *Hodgson v. Behrens Drug Co.,* 475 F.2d 1041, 1050 (5th Cir.), *cert. denied,* 414 U.S. 822, 94 S.Ct. 121, 38 L.Ed.2d 55 (1973)). The statute of limitations for an EPA claim begins to run on the date that the plaintiff received her last allegedly discriminatory paycheck. *Id.* (citing *Miller,* 977 F.2d at 844). Because Plaintiff in the instant case alleges ongoing pay discrimination and she continues to work for Defendant, each paycheck she continues to receive constitutes an alleged violation. Therefore, her claims regarding unequal pay were timely filed.

### 2. *Prima Facie* Case

■ Claims based upon the EPA[8] follow a two-step burden-shifting paradigm. *See Stanziale v. Jargowsky,* 200 F.3d 101, 107 (3d Cir.2000). The plaintiff must first establish a *prima facie* case by demonstrating that employees of the opposite sex were paid differently for performing "equal work," which is work of substantially equal skill, effort and responsibility, under similar working conditions. *Id.* at 107(citing *EEOC v. Delaware Dept. of Health & Social Servs.,* 865 F.2d 1408, 1413–14 (3d Cir.1989)). In order to prove an EPA claim, a plaintiff need only establish that she was paid differentially because of her sex with respect to a single male employee. *Dubowsky v. Stern, Lavinthal, Norgaard & Daly,* 922 F.Supp. 985, 990 (D.N.J.1996); *see also Mulhall v. Advance Sec., Inc.,* 19 F.3d 586, 590 (11th

Cir.1994), *cert. denied,* 513 U.S. 919, 115 S.Ct. 298, 130 L.Ed.2d 212 (1994) (citing *Mitchell v. Jefferson County Bd. of Ed.,* 936 F.2d 539, 547 (11th Cir.1991)).

■ The burden of persuasion then shifts to the employer to demonstrate the applicability of one of the four affirmative defenses available under the EPA, which are: (1) a bona fide seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) a differential based on any factor other than sex. *Delaware Dep't of Health,* 865 F.2d at 1414. Because the employer bears the burden of proof at trial, in order to prevail at the summary judgment stage, the employer must prove at least one affirmative defense "so clearly that no rational jury could find to the contrary." *Id.* Not only must the employer submit evidence from which a reasonable factfinder could conclude that the employer's proffered reasons could explain the wage disparity, but the employer must produce sufficient evidence from which a reasonable factfinder could conclude that the proffered reasons actually motivated the wage disparity. *Stanziale,* 200 F.3d at 108–9.

GMP initially submitted the affidavit of Kevin O'Reilly, GMP's director of human resources, which described in detail that most of the nine comparators Plaintiff listed during discovery are doing jobs different from Plaintiff's, and that either this difference in the jobs or the additional training, qualifications, and experience of

---

8. The Equal Pay Act, 29 U.S.C. § 206(d)(1) provides in relevant part:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in

such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

each of the nine comparators explains the pay disparity. (O'Reilly Aff., Def.'s Mot. Partial Summ. J., Ex. A). Because O'Reilly lacked personal knowledge regarding the jobs of some of Plaintiff's comparators, the Court struck .five paragraphs (28–29; 33–35) from his affidavit, and Defendant was given an opportunity to supplement its Motion with evidence from elsewhere in the record. Defendant did so, and Plaintiff responded.

Plaintiff was hired in August 1978 as an Assembler C, at which time she had approximately four years of experience in machining and assembly. (Def.'s Mot. Partial Summ. J., Ex. M). She was promoted to Assembler B in 1985 and to Assembler A in November 2000. *Id.* at Ex. B.

"The courts have been required to look beyond the job title to determine whether the jobs are substantially equal." *Brobst v. Columbus Servs. Int'l,* 761 F.2d 148, 151 (3d. Cir.1985). "[T]he relevant issue is not the name under which the position was classified but what was actually done." *Id.* at 155.

### (a) CNC Machine Operator

Plaintiff compares herself to Vincent Alicea and Gerald Couper, who have each been classified as Computer Numeric Control ("CNC") Machine Operator A's since January 1996. *Id.* at Ex. P. Both men are required to do complete set-up of CNC machines as part of their jobs. (O'Reilly Aff. ¶ 26, Def.'s Mot. Partial Summ. J., Ex. A). They are given a blueprint drawing of a part and then set up and program the machine to make that exact part. *Id.* They are required to do CNC programming in a language called Mazatrol and G–Code. *Id.*

James Coyle and Alex Pfeiffer also have been classified as CNC Machine Operator A's since January 1996. (Def.'s Mot. Partial Summ. J., Ex. Q). Mr. Coyle is required to do CNC programming in Mazatrol and G–Code, and Mr. Pfeiffer is required to do set-up and programming in G–Code. (O'Reilly Aff. ¶ 27, Def.'s Mot. Partial Summ. J., Ex. A).

Although Plaintiff has spent time working on CNC machines, Defendant contends that Plaintiff lacks the ability to do complete set-ups on CNC machines and can only do· partial set-ups. (O'Grady Dep. at 34, Def.'s Mot. Partial Summ. J., Ex. R). However, Plaintiff claims that when she was transferred to the machining center, the men there were doing the same job she was doing. (Ryan Dep. at 30, 36, Pl.'s Resp. Def.'s Mot. Partial Summ. J., Ex. A). Plaintiff loaded the machines, ran the parts, set up the machinery, and cleaned the machines. *Id.* at 35–36.

In November 1998, when Plaintiff worked as a machinist, she was paid $15.23 per hour; Mr. Alicea was paid $18.98 per hour; Mr. Couper was paid $15.91 per hour; Mr. Coyle made $18.43 per hour; and Mr. Pfeiffer earned $20.35 per hour. (Pl.'s Resp. Def.'s Mot. Partial Summ. J., Exs. F, G).

### (b) Combination Welder

Plaintiff also compares herself to Joseph Dixon, who has been classified as a combination welder since January 1996. (O'Reilly Aff. ¶ 30, Def.'s Mot. Partial Summ. J., Ex. A). He is certified by the Welder & Training Testing Institute in MIG, TIG, and Heli–Arc welding. *Id.*

During her employment, Plaintiff has done "spot welding," which involves using a machine to stamp parts together using a weld. (Ryan · Dep. at 54–56, Pl.'s Resp. Def.'s Mot. Partial Summ. J., Ex. A). Plaintiff admits she has never done MIG, TIG, or any other type of special welding. *Id.*

Mr. Dixon's starting pay in January 1996 was $16.62 per hour, and increased to $17.12 per hour in May 1996; $17.63 per hour in May 1997; $18.16 per hour in November 1998; $18.71 per hour in November 1999; $19.85 per hour in November 2000; and $20.45 per hour in November 2001. (Pl.'s Resp. Def.'s Mot. Partial Summ. J., Ex. F). Plaintiff's pay in January 1996 was $13.43 per hour, and increased to $13.83 per hour in May 1996; $14.74 per hour in May 1997; $15.23 per hour in November 1998; $15.78 per hour in November 1999; $17.00 per hour in November 2000; and $17.51 per hour in November 2001. *Id.* at Ex. G.

### (c) Machine Operator A

Plaintiff compares herself to Kenneth Bready and James Rawlins, who have both been classified as Machine Operator A's since January 1996. (O'Reilly Aff. ¶ 31, Def.'s Mot. Partial Summ. J., Ex. A). Both men are capable of performing total set-up on machines as well as CNC programming in G–Code. *Id.*

Mr. Bready's starting pay in January 1996 was $16.11 per hour; his wages were later increased to $16.59 per hour in May 1996; $17.09 per hour in May 1997; $17.65 per hour in November 1998; $18.27 per hour in November 1999; $18.91 per hour in November 2000; and $19.48 in November 2001. (Pl.'s Resp. Def.'s Mot. Partial Summ. J., Ex. F). Mr. Rawlins' starting pay was $15.34 per hour; his pay later increased to $15.80 per hour in May 1996; $16.27 per hour in May 1997; $16.83 per hour in November 1998; $17.39 per hour in November 1999; $18.00 per hour in November 2000; and $18.54 per hour in November 2001. *Id.* at Ex. F.

Plaintiff's pay in January 1996 was $13.43 per hour, and increased to $13.83 per hour in May 1996; $14.74 per hour in May 1997; $15.23 per hour in November 1998; $15.78 per hour in November 1999;

$17.00 per hour in November 2000; and $17.51 per hour in November 2001. *Id.* at Ex. G.

### (d) Assembler A

Plaintiff has been classified as Assembler A since November 2000. She compares her pay to two men in the same classification: Joseph Crossley and Alan Medberry.

Mr. Medberry was hired by GMP in July 1970, eight years before Plaintiff. (O'Reilly Aff. ¶ 32, Def.'s Mot. Partial Summ. J., Ex. A). At the time he was hired, he had two years of experience as a diesel mechanic. *Id.* At GMP, Mr. Medberry became an automotive maintenance mechanic, where he was responsible for repairing a fleet of vehicles maintained by GMP. *Id.* When that line of business ended, Mr. Medberry was transferred to the maintenance department as a maintenance mechanic responsible for troubleshooting and repairing production shop machinery. *Id.* When that department was downsized, Mr. Medberry was demoted to the position of Assembler A, but his rate of pay was not decreased. *Id.* Because of his background in machinery repair, much of Mr. Medberry's time is spent working on GMP's C, J, and G cable lashers. *Id.* He is able to diagnose machine problems, dismantle machines, estimate the cost of repair, and perform the necessary repairs. *Id.*

Joseph Crossley performs the same work as Mr. Medberry, and he additionally diagnoses and repairs Apollo and C2 Cable Lashers. (O'Reilly Aff. ¶ 23, Def.'s Mot. Partial Summ. J., Ex. A).

Plaintiff testified in her deposition that she was doing the same job as Mr. Medberry and Mr. Crossley in 1999 through 2002 as well as doing lasher repairs. (Ryan Dep. at 100–01, Pl.'s Resp. Def.'s Mot. Partial Summ. J., Ex. A). From

November 1999 through November 2000, Plaintiff was paid $15.78 per hour while Mr. Medberry earned $21.79 per hour, and Mr. Crossley made $16.59 per hour. (Pl.'s Resp. Def.'s Mot. Partial Summ. J., Exs. F, G). Plaintiff received a raise to $17.00 per hour in November 2000; Mr. Medberry also earned a raise in November 2000 to $22.17 per hour; and Mr. Crossley received a raise in November 2000 to $17.17 per hour. *Id.*

### 3. Genuine Issue of Material Fact Regarding EPA Claims

In light of the evidence adduced by Plaintiff, the Court cannot grant Defendant's Motion for Partial Summary Judgment on Plaintiff's claims of unequal pay. Plaintiff has established a *prima facie* case of pay discrimination by demonstrating that employees of the opposite sex were paid differently for performing "equal work," work of substantially equal skill, effort and responsibility, under similar working conditions. *Stanziale*, 200 F.3d at 107. Although Defendant has offered a reason for the pay differential "based on [a] factor other than sex," *Delaware Dep't of Health*, 865 F.2d at 1414, namely that Plaintiff had fewer qualifications and less experience than her male comparators, Plaintiff has proffered evidence, as discussed above, that she was indeed qualified for these positions. Thus, Defendant contends Plaintiff is doing a different job than her comparators, but has not proved its affirmative defense "so clearly that no rational jury could find to the contrary." *Id.* Accordingly, Defendant's Motion for Partial Summary Judgment on Plaintiff's claims of unequal pay under the EPA, Title VII, and the PHRA will be denied.

### V. Conclusion

Because the first four (Erhart, Trasatti, Holcroft, and MacHugh) of Plaintiff's five specific claims under Title VII, the PHRA, and the PERA regarding failure to promote are time-barred and not saved by the continuing violation theory, judgment will be entered in favor of Defendant and against Plaintiff on these claims. Plaintiff's fifth specific claim (Koby and O'Grady) under Title VII, the PHRA, and the PERA regarding failure to promote in January 2002 was not included in Plaintiff's EEOC charge, and judgment will be entered in favor of Defendant and against Plaintiff on this claim.

Plaintiff's claim that she was not promoted from Level C for 22 years is time-barred and not saved by the continuing violation theory, and judgment will be entered in favor of Defendant and against Plaintiff on this claim.

Because Plaintiff never filed a claim with the EEOC or PHRA regarding failure to train, she failed to exhaust her administrative remedies, and judgment will be entered in favor of Defendant and against Plaintiff regarding Plaintiff's failure to train claims.

The Court finds that there are genuine issues of material fact regarding Plaintiff's equal pay claims. Therefore, Defendant's Motion for Partial Summary Judgment will be denied as to Plaintiff's equal pay claims under Title VII, the PHRA, and the EPA.

An appropriate Order follows.

### ORDER

AND NOW, this 21st day of August, 2003, upon consideration of Defendant's Motion for Partial Summary Judgment (Doc. No. 20), Plaintiff's response thereto (Doc. No. 22), Defendant's reply (Doc. No. 24), the oral arguments of the parties, Defendant's Supplemental Memorandum in Support of its Motion for Partial Summary Judgment (Doc. No. 40), and Plaintiff's response thereto (Doc. No. 41), it is hereby ORDERED as follows:

1. Defendant's Motion is GRANTED as to all of Plaintiff's claims regarding failure to promote and failure to train under Title VII, the PHRA, and the PERA.

2. Defendant's Motion is GRANTED as to Plaintiff's claim regarding unequal pay under the PERA.

3. Defendant's Motion is DENIED as to Plaintiff's claim regarding unequal pay under the EPA, Title VII, and the PHRA.

4. As Plaintiff already has filed a Pretrial Memorandum, Proposed Voir Dire Questions, and Proposed Jury Interrogatories, Defendant shall file same within fourteen (14) days.

5. This case shall be listed in the trial pool for September 15, 2003.