

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-10-2000

# Stanziale v Jargowsky

Precedential or Non-Precedential:

Docket 99-5030

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Stanziale v Jargowsky" (2000). *2000 Decisions*. Paper 4.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/4

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 10, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 99-5030

FULVIO STANZIALE
Appellant

v.

LESTER JARGOWSKY, PUBLIC HEALTH COORDINATOR;
COUNTY OF MONMOUTH; MONMOUTH COUNTY
BOARD OF HEALTH

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Civil Action No. 96-cv-03626)
District Judge: Honorable Mary Little Cooper

Argued: November 17, 1999

BEFORE: ALITO and STAPLETON, Circuit Judges,
and FEIKENS,* District Judge

(Opinion Filed January 10, 2000)

_____

* Honorable John Feikens, United States District Judge for the Eastern
District of Michigan, sitting by designation.


        Malcolm V. Carton
        Christopher J. Hanlon (Argued)
        Monmouth County Counsel
        Fredrick P. Niemann
        Assistant Monmouth County
         Counsel
        Woodhull House
        63 West Main Street
        Freehold, NJ 07728
         Attorneys for Appellees

        Jeffrey P. Ferrier (Argued)
        146 Highway 34
        Suite 400
        Holmdel, NJ 07733
         Attorney for Appellant

OPINION OF THE COURT

FEIKENS, District Judge:

## I. INTRODUCTION

Appellant Fulvio Stanziale (Stanziale) sued his employer
alleging violations of the Age Discrimination in Employment
Act (ADEA), 29 U.S.C. S 623, Title VII of the Civil Rights Act
of 1964 (Title VII), 42 U.S.C. S 2000e, the Equal Pay Act, 29
U.S.C. S 206 et seq., the New Jersey Law Against
Discrimination (NJLAD), N.J.S.A. S 10:5-12, and the New
Jersey Equal Pay Act (NJEPA), N.J.S.A. S 34:11-56.2. The
District Court granted summary judgment as to all counts
and Stanziale now appeals.

## II. BACKGROUND

In April 1990, appellee Lester Jargowsky (Jargowsky), a
coordinator for appellee Monmouth County Board of
Health, offered a job to Stanziale as an Environmental
Specialist at a starting salary of $25,500. Stanziale declined
the offer. Several months later, in August 1990, Jargowsky
offered Stanziale a similar job as a Sanitation Inspector at
a starting salary of $24,500. He accepted this second offer.

2

Shortly after Stanziale was hired, appellees hired a
younger female, Lisa Muscillo (Muscillo), as a Sanitary
Inspector, at a starting salary of $26,500. Both Stanziale
and Muscillo were consistently given 5% raises each year so
that, in July 1996, their salaries were $32,673 and
$35,342, respectively. Based on this wage disparity,
plaintiff filed the present lawsuit.1

Appellees moved to dismiss the complaint pursuant to
Federal Rule of Civil Procedure (FRCP) 12(b)(6), which the
District Court converted to a FRCP 56 motion for summary
judgment. Relevant to this appeal,2 in an opinion dated
December 18, 1997, the District Court granted appellees'
motion for summary judgment as to Stanziale's claims of
discrimination based upon the salary disparity between
Muscillo and Stanziale. The District Court held that
Stanziale had met his prima facie burden under McDonnell
Douglas Corp. v. Green, 411 U.S. 792 (1983), and that
appellees had, relevant to Muscillo's salary, offered
legitimate non-discriminatory reasons for the disparity.
That court noted that "[p]laintiff has offered only vague
conclusory statements in response to defendants' proffered
reasons," and therefore granted summary judgment as to
the Title VII, ADEA and NJLAD claims. Based solely on

these findings as to Muscillo's salary, the District Court

_____

1. Stanziale's claims of discrimination would eventually be premised on the salaries of five women employed by defendants as Sanitary Inspectors who were, allegedly, being paid higher salaries than Stanziale. Subsequent motions resulted in the District Court determining that three of the alleged wage disparities were irrelevant to Stanziale's claims.
Appellant has not contested this determination. Wage disparities between Stanziale and the fourth woman were addressed in an opinion by the District Court in December 1998. (See footnote 2).

2. The opinion of the District Court dated December 18, 1997, articulated several rulings that have not been appealed to this court. In addition, the District Court denied defendants' motion for summary judgment as to all claims based upon the starting salary of a second younger woman Sanitary Inspector, Eve Fuhring-Savino. On subsequent motion, in December 1998 the District Court granted summary judgment as to claims based upon the disparity in starting salary between Stanziale and Fuhring-Savino. Appellant has not presented an argument on appeal disputing the merits of the District Court's treatment of the claim based on the salary of Fuhring-Savino.

3

also granted summary judgment as to the Equal Pay Act and NJEPA claims.

In December 1998, the District Court revisited Stanziale's Equal Pay Act and NJEPA claims in the context of a second summary judgment motion by appellees. In a second opinion, the District Court conceded that claims under the Equal Pay Act were not governed by the same standards as claims under Title VII and the ADEA, but after reconsidering the issue, found that summary judgment had been properly granted as to the Equal Pay Act and NJEPA claims.

Stanziale has appealed, arguing that summary judgment was improperly granted as to the claims based on the wage disparity between him and Muscillo.

III. STANDARD OF REVIEW

Review of the District Court's grant of summary judgment is plenary. See Kelly v. Drexel University, 94 F.3d 102, 104 (3d Cir.1996). We must determine whether the record, when viewed in a light favorable to Stanziale, shows that there is no genuine issue of material fact and that appellees were entitled to summary judgment as a matter of law. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50
(1986).

IV. DISCUSSION

A. THE ADEA AND TITLE VII CLAIMS

The parties' burdens in establishing and defending claims
under the ADEA and Title VII3 are determined by the
procedure set forth in McDonnell Douglas Corp. v. Green,
411 U.S. 792 (1973). See Showalter v. University of

_____

3. While appellant's brief on appeal does not specifically address the
District Court's dismissal of the Title VII claim, because the Title VII
and
ADEA claims considered by the District Court involve analyses that are
identical in the present case, this opinion will refer to both the ADEA
and Title VII claims.

4

Pittsburgh Medical Center, 190 F.3d 231, 234 (3rd Cir.
1999). A plaintiff must first produce evidence sufficient to
convince a reasonable factfinder as to all of the elements of
a prima facie case of discrimination. Id.. If a plaintiff
establishes a prima facie case, " `[t]he burden of production
(but not the burden of persuasion) shifts to the defendant,
who must then offer evidence that is sufficient, if believed,
to support a finding that the defendant had a legitimate,
nondiscriminatory reason for the [adverse employment
decision].' " Id. at 235 (quoting Keller v. Orix Credit Alliance,
Inc., 130 F.3d 1101, 1108 (3rd Cir. 1997) (citing Hicks, 509
U.S. at 506-07, 113 S.Ct. 2742 (1993)); see also Smith v.
Borough of Wilkinsburg, 147 F.2d 272, 278 (3rd. Cir. 1998).
An employer need not prove, however, that the proffered
reasons actually motivated the salary decision. Fuentes v.
Perskie, 32 F.3d 759, 763 (Cir. 1994). If a defendant
satisfies this burden, a plaintiff may then survive summary
judgment by submitting evidence from which a factfinder
could reasonably either (1) disbelieve the employer's
articulated legitimate reasons; or (2) believe that an
invidious discriminatory reason was more likely than not a
motivating or determinative cause of the employer's action.
Keller, 130 F.3d at 1108; Fuentes, 32 F.3d at 763.

In this case, the District Court found, and the parties do
not dispute, that Stanziale established a prima facie case.
Likewise, the parties do not dispute that appellees met their
burden of production under the second step of the
McDonnell Douglas framework. They proffered several
legitimate, nondiscriminatory reasons for the salary

disparity between Stanziale and Muscillo -- qualifications that Muscillo possessed and Stanziale lacked, including (1) a bachelor's degree; (2) a post-graduate education; (3) computer skills; (4) job experience using computer skills; (5) recent sanitary inspector experience; and (6) certifications in pesticide application and lead poisoning investigations. Each of these qualifications is documented in Muscillo's resume included in the record. The burden then fell on Stanziale to demonstrate a triable issue of fact through evidence which could cause a reasonable factfinder to disbelieve the proffered legitimate reasons or to believe that age and/or sex discrimination was more likely than not a motivating factor in the hiring decision.

5

Appellant satisfied his burden as to some of these six reasons. For instance, as to appellees' argument that computer skills explains the disparity in wages, Stanziale noted that the Sanitary Inspector job does not require the use of computers and that in 1990 the Health Board did not even have computers. These facts, if true, could cause a reasonable factfinder to conclude that Muscillo's "computer skills" and/or "job experience using computer skills," offered by appellees as reasons for the wage disparity, are pretextual.

Stanziale also argued that the "recent sanitary inspector experience" reason offered by appellees was pretextual. Stanziale noted that he worked as a Sanitary Inspector for an unrelated community for eight years, albeit in the late 1960's and early 1970's. He testified in his deposition that the job had not changed over time, so that his years of experience, 17 years before his hiring, ought to be weighed more heavily than Muscillo's 1 1/2 years of experience just prior to her hire. In essence, Stanziale argued that in his estimation, he was more experienced than Muscillo, so that there existed a triable issue of fact as to whether appellees' proffered reason was pretextual.

Whatever the case as to these factors, it is undisputed that Muscillo does possess more qualifications than Stanziale, especially as to the bachelor's degree and post-graduate education.4 Muscillo has a bachelor's degree in business administration. Perhaps more relevant to her work

_____

4. In Fuentes, this court noted that in order to survive summary judgment, a plaintiff must provide evidence from which a factfinder could reasonably conclude "that each of the employer's proffered non-discriminatory" reasons was pretextual. Fuentes, 32 F.3d at 764 (emphasis in original). As Judge Stapleton notes in partial dissent, this

court also noted that "the factfinder's rejection of some of the defendant's
proffered reasons may impede the employer's credibility seriously enough so that a factfinder may rationally disbelieve the remaining proffered reasons". Id. at 764 n. 7. This language does not, of course, provide a general rule. Rather, as this language suggests, the relevant, case-by-case inquiry is whether the employer's lack of credibility as to some of the proffered reasons so seriously undermines its credibility that a factfinder could reasonably disbelieve all of the employer's proffered reasons.

as a Sanitary Inspector, she also has completed a seven-week course on environmental and public health and law from Rutgers University, is a certified pesticide applicator and is a certified operator for a lead poisoning testing device.

In response, Stanziale does not dispute that he lacks these educational qualifications, but instead notes that he was not asked about such qualifications in his interview. He alleges that his application for the position of Sanitary Inspector (which reveals his lack of these educational qualifications) was not provided to appellees until after he was hired. From this, Stanziale contends that these educational qualifications are not necessary to the job of Sanitary Inspector; they were not considered in establishing his salary, and they do not, therefore, explain the wage disparity.

Assuming that the facts are as Stanziale suggests, it does not follow that summary judgment was improperly granted. The fact that Stanziale was not asked about his educational qualifications does suggest that Muscillo's educational qualifications are beyond those minimally required for the position of Sanitary Inspector. It also suggests that Stanziale's salary was not based on his college and post-college education (or lack thereof). However, the fact that Muscillo's educational qualifications go beyond those minimally required for the position of Sanitary Inspector, or the fact that those qualifications go beyond those required of Stanziale at his hire, would not preclude appellees from considering them in determining Muscillo's salary.

It is, of course, true, as the dissent notes, that employers are unlikely to reward employees economically for qualifications that are going to make no significant contribution to the enterprise. In many instances, plaintiffs will satisfy their burden of establishing pretext by demonstrating that the employer's alleged qualifications bear no actual relationship to the employment at issue.

Notwithstanding Stanziale's contentions as to what he was asked prior to his hiring, he has not presented sufficient evidence such that a factfinder could reasonably conclude that Muscillo's superior qualifications, particularly her qualifications as to lead poisoning, pesticides, and public

7

health and law, are so unrelated to her employment as a Sanitary Inspector as to be a pretext for intentional discrimination. Under both the ADEA and Title VII, Stanziale bears this ultimate burden of proving intentional discrimination. See Simpson v. Kay Jewelers, Division of Sterling, Inc., 142 F.3d 639, 644 n. 6 (3rd Cir. 1998) (quoting Fuentes, 32 F.3d at 763). Summary judgment was therefore proper as to the ADEA and Title VII claims, and the corresponding state claims under N.J.S.A. S 10:5-12.5

B. THE EQUAL PAY ACT CLAIM

Unlike the ADEA and Title VII claims, claims based upon the Equal Pay Act, 29 U.S.C. S 206 et seq., do not follow the three-step burden-shifting framework of McDonnell Douglas; rather, they follow a two-step burden-shifting paradigm. The plaintiff must first establish a prima facie case by demonstrating that employees of the opposite sex were paid differently for performing "equal work"--work of substantially equal skill, effort and responsibility, under similar working conditions. E.E.O.C. v. Delaware Dept. of Health and Social Services, 865 F.2d 1408, 1413-14 (3rd Cir. 1989). The burden of persuasion then shifts to the employer to demonstrate the applicability of one of the four affirmative defenses specified in the Act. Id. at 1414 (citing Corning Glass Works v. Brennan, 417 U.S.188, 195 (1974).6 Thus, the employer's burden in an Equal Pay Act claim -- being one of ultimate persuasion -- differs significantly from its burden in an ADEA claim. Because the employer bears the burden of proof at trial, in order to prevail at the summary judgment stage, the employer must prove at least one affirmative defense "so clearly that no rational jury could find to the contrary." Delaware Dept. of Health, 865 F.2d at 1414.

_____

5. Appellant concedes in his brief on appeal that the analysis applicable to the ADEA and Title VII claims is also applicable to the state law claims under the NJLAD.

6. The four affirmative defenses enumerated under the Act are: (i) a bona fide seniority system, (ii) a merit system, (iii) a system which measures earnings by quantity or quality of production, or (iv) a differential based

on any factor other than sex. 29 U.S.C. S 206(d)(1).

The employer's burden is significantly different in defending an Equal Pay Act claim for an additional reason. The Equal Pay Act prohibits differential pay for men and women when performing equal work "except where such payment is made pursuant to" one of the four affirmative defenses. 29 U.S.C. S 206(d)(1) (emphasis added). We read the highlighted language of the statute as requiring that the employer submit evidence from which a reasonable factfinder could conclude not merely that the employer's proffered reasons could explain the wage disparity, but that the proffered reasons do in fact explain the wage disparity. See also Delaware Dept. of Health, 865 F.2d at 1415 (stating that "the correct inquiry was . . . whether, viewing the evidence most favorably to the [plaintiff], a jury could only conclude that the pay discrepancy resulted from" one of the affirmative defenses (emphasis added)). Thus, unlike an ADEA or Title VII claim, where an employer need not prove that the proffered legitimate nondiscriminatory reasons actually motivated the salary decision, see Fuentes, 32 F.3d at 763, in an Equal Pay Act claim, an employer must submit evidence from which a reasonable factfinder could conclude that the proffered reasons actually motivated the wage disparity. More to the point, where, as here, employers seek summary judgment as to the Equal Pay Act claim, they must produce sufficient evidence such that no rational jury could conclude but that the proffered reasons actually motivated the wage disparity of which the plaintiff complains.

We have already noted several factors that appellees have proffered which could explain the wage disparity, and we have no doubt that Muscillo's educational qualifications fall within the meaning of the fourth affirmative defense, "a differential based on any factor other than sex." 29 U.S.C. S 206(d)(1). What is missing in this record, however, is some evidence that demonstrates that the decision to pay Muscillo a starting salary of $2,000 more than plaintiff was in fact made pursuant to these qualifications. 7 Because it

_____

7. Significantly, despite the fact that appellee Jargowsky, the individual responsible for the hiring of both Stanziale and Muscillo, filed two affidavits in this case, one of which describes the qualifications Muscillo
possesses and Stanziale lacks, neither affidavit affirmatively states that Muscillo's higher wage was in fact the result of one or more of these qualifications.

was appellees' burden to establish this fact "so clearly that no rational jury could find to the contrary", Delaware Dept. of Health, 865 F.2d at 1414, the grant of appellees' motion for summary judgment as to the Equal Pay Act and NJEPA claims is error.

V. CONCLUSION

For the foregoing reasons, the District Court's grant of summary judgment as to the ADEA, Title VII and NJLAD claims is AFFIRMED. The grant of summary judgment as to the Equal Pay Act and NJEPA claims, however, is REVERSED. This case is remanded to the District Court for further proceedings not inconsistent with this opinion.

STAPLETON, J., concurring in part and dissenting in part:

I join in all of the court's opinion other than section IV-A. While it is a close question, unlike my colleagues, I conclude that Stanziale has pointed to sufficient evidence of pretext to avoid summary judgment on the ADEA and Title VII claims. Accordingly, I would reverse and remand for further proceedings on those claims, as well as on the Equal Pay Act claim.

My conclusion differs from that of my colleagues primarily for two reasons. First, while I agree that it does not offend the ADEA or Title VII to pay a higher salary to one employee than to another based on qualifications unrelated to their job performance, I regard the fact that an employer purports to have done so as significant circumstantial evidence of pretext. Employers rarely reward employees for qualifications that are going to make no significant contribution to the employer's mission.

Second, because the applicable law regards pretext as circumstantial evidence that a prohibited motive is behind the employer's decision, a factfinder's conclusion of pretext with respect to some of the non-discriminatory justifications tendered by the employer may legitimately affects its decision with respect to other justifications. As we observed in Fuentes v. Perskie, 32 F.3d 759, 764 n7 (3d Cir. 1994):

> We do not hold that, to avoid summary judgment, the
> plaintiff must cast doubt on each proffered reason in a

vacuum. If the defendant proffers a bagful of legitimate reasons, and the plaintiff manages to cast substantial doubt on a fair number of them, the plaintiff may not need to discredit the remainder. That is because the factfinder's rejection of some of the defendant's proffered reasons may impede the employer's credibility seriously enough so that a factfinder may rationally disbelieve the remaining proffered reasons, even if no evidence undermining those remaining rationales in particular is available.

11

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

12