**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3533
_____

BEATRIZ RHOADES,
                                                 Appellant

v.

YOUNG WOMEN'S CHRISTIAN ASSOCIATION OF GREATER PITTSBURGH;
VALERIE WHEATLEY, as an individual; BARBARA MANNING, as an individual;
LILLIAN YOUNG, as an individual; and DENA DAVIS, as an individual
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 09-cv-00261)
District Judge:  Honorable Donetta W. Ambrose
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 11, 2011
Before:  RENDELL, CHAGARES and ALDISERT, <u>Circuit</u> <u>Judges</u>

(Opinion filed: April 15, 2011)

_____

OPINION
_____

PER CURIAM

        Beatriz Rhoades appeals from an order of the District Court granting summary

judgment on her Equal Pay Act and retaliation claims.  For the following reasons, we will

affirm.

I.

Rhoades brought the instant lawsuit against her former employer, the Young Women's Christian Association of Greater Pittsburgh (YWCA); Valerie Wheatley, YWCA's Chief Financial Officer; Barbara Manning, YWCA's Director of Financial Services; and LillianYoung and Dena Davis, both of whom worked in YWCA's Human Resources Department during Rhoades's employment. Wheatley, Manning, Young and Davis all participated to some extent in Rhoades's hiring and/or termination.

A.    Rhoades's Predecessor

Rhoades's predecessor, Edward Kennedy, was hired in 2003 by YWCA as an "accounts payable/payroll specialist." YWCA created the specialist position after transitioning to a computerized payroll system due to the need for an individual to get the system up and running and train other employees to use the system.

Kennedy was a desirable candidate due to his strong background in computerized payroll systems. YWCA initially offered Kennedy $33,000, but he rejected that offer because he claimed that the benefits offered by YWCA cost three times more than the benefits he was receiving through his current employer. Accordingly, YWCA offered $34,000, and Kennedy accepted. He voluntarily resigned in April 2004.

B.    Rhoades's Employment with YWCA

After Kennedy's departure, YWCA concluded that it no longer needed an accounts payable/payroll specialist because Kennedy had successfully completed his duties. Accordingly, in October 2004, YWCA created a new position for an accountant.

2

The accountant would be expected to reconcile accounts, review YWCA's accounts and books, and prepare reports, as well as participate in payroll and accounts payable activities. Young recommended a salary range of $30,000 to $35,000 for the position based on a United Way survey that compared similar positions in several non-profit organizations.

In August 2005, Rhoades applied for the position, listing her desired starting salary as $28,000 to $31,000. Rhoades has a Bachelor of Accounting and a Certified Public Accountant degree from a university in Colombia, worked on a part-time basis as an accountant for several small companies in Colombia, and worked as an accountant for a small employer in the United States for a year and a half. Her resume boasted over ten years of accounting-related experience. After interviewing successfully, Rhoades was offered the position at a salary of $33,000, consistent with YWCA's practice of making an offer below the maximum approved salary to allow room for negotiation. Rhoades accepted the offer without attempting to negotiate and began her employment with YWCA on September 26, 2005. Manning served as her direct supervisor.

On April 26, 2006, Rhoades received her six-month performance review from Manning. She received a rating of "achieves expectations" in the listed categories and was given a number of goals to complete by the end of August 2006. As Rhoades had been spending almost all of her time processing payroll, the tasks were intended to shift her focus to auditing and accounting functions consistent with her job duties.

In July 2006, Rhoades mentioned to Wheatley and Manning that she was being

paid less than Kennedy had been paid. According to Rhoades, Manning responded that she did not make decisions about salaries. Wheatley responded that Kennedy had probably negotiated for the higher salary.

Around the same time, Rhoades's performance at work began to suffer. Essentially, Rhoades did not complete the auditing and accounting goals set forth in her six-month evaluation because she spent her time processing payroll and was insufficiently familiar with the computerized system to establish an auditing plan. According to Rhoades, the turnover of employees in the financial services department was partially responsible for her focus on payroll as was the sheer size of the payroll at YWCA. Wheatley and Manning claimed that Rhoades's attendance suffered – she would come to work late or leave early, and failed to request time off in advance – although Rhoades disputes the extent of those issues. Additionally, Rhoades made mistakes in performing her job. For example, she twice posted invoices to the incorrect month.

Accordingly, Rhoades received an overall rating of "Needs Improvement" on her December 15, 2006 annual performance evaluation. As Rhoades had not met the goals identified in the six-month performance evaluation, the annual evaluation reiterated those goals with updated completion dates, and identified specific areas for improvement. Regardless, Rhoades continued to have difficulty managing her workload and meeting deadlines, and sent a former employee the incorrect tax forms. Accordingly, on March 23, 2007, Manning gave Rhoades a "Performance Improvement Plan" ("PIP"), which identified Rhoades's shortcomings, suggested means of correcting those shortcomings,

4

and set forth tasks to be completed by certain dates. Although the listed deadlines gave Rhoades only a few weeks at most for completion, many of the tasks were the same ones Rhoades had been instructed to complete since April. Rhoades communicated to Manning her belief that the annual evaluation and PIP were inaccurate and that the target dates in the PIP were unreasonable because she already had a full workload.

Manning met with Rhoades on April 20, 2007, to discuss the PIP. Rhoades had not completed the goals therein and her performance and attitude had not improved. Accordingly, Manning, with Wheatley's approval, terminated Rhoades on April 25, 2007.

C.      Rhoades's Successor

YWCA sought an accountant to replace Rhoades, preferably someone with experience handling complex accounting who could perform at a higher level. The position was initially listed with a starting salary in the range of $30,000 to $35,000. However, in July 2007, Young retained a third-party vendor to conduct a compensation study. As a result of that study, YWCA increased the salary for the accountant position to $40,000 to make it consistent with market rates.

Stephen Meyers applied for the position on December 15, 2007, seeking a salary between $35,000 and $40,000. Meyers has a bachelor's degree in accounting and management and well over a decade of accounting experience. He had most recently worked as an accountant for a large non-profit insurance company, which, according to YWCA, made him ideal for the accountant position. YWCA offered Meyers the job at a

starting salary of $38,000, which he accepted.

D.      Procedural History

Rhoades filed an Amended Complaint alleging that her former employer and co-workers violated the Equal Pay Act, 29 U.S.C. § 206(d), by paying her less than Kennedy and Meyers, and retaliated against her for complaining about the disparity by increasing her workload, giving her bad reviews and unreasonable deadlines, and ultimately firing her, in violation of the anti-retaliation provision of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3). After discovery, appellees moved for summary judgment. The District Court granted the motion and Rhoades timely appealed.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. Our jurisdiction arises under 28 U.S.C. § 1291. "We exercise *de novo* review over the District Court's grant of summary judgment." Ray v. Twp. of Warren, 626 F.3d 170, 173 (3d Cir. 2010). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[1] Fed. R. Civ. P. 56(c)(2). We must "view all evidence and draw all inferences in the light most favorable to the non-moving party . . . ." Startzell v. City of Phila., 533 F.3d 183, 192 (3d Cir. 2008).

---

[1] The text of Rule 56 changed as of December 1, 2010. However, we will apply the version of the rule in effect at the time the parties moved for summary

III.

We have thoroughly reviewed the record and agree with the District Court that summary judgment is appropriate.

A.    Equal Pay Act

A plaintiff establishes a prima facie case of an Equal Pay Act violation "by demonstrating that employees of the opposite sex were paid differently for performing equal work – work of substantially equal skill, effort and responsibility, under similar working conditions." Stanziale v. Jargowsky, 200 F.3d 101, 107 (3d Cir. 2000) (quotations omitted). If the plaintiff can establish a prima facie case, the employer may prevail by establishing that the disparity in pay is due to "a differential based on [a] . . . factor other than sex." 29 U.S.C. § 206(d)(1); Stanziale, 200 F.3d at 107. Since the employer bears the burden of proof on that issue, summary judgment is properly granted "only if the record shows that [the employer] established the defense so clearly that no rational jury could have found to the contrary." EEOC v. Del. Dep't of Health & Soc. Servs., 865 F.2d 1408, 1414 (3d Cir. 1989) (footnote omitted).

We agree with the District Court that Rhoades did not perform equal work to Kennedy. "The crucial finding on the equal work issue is whether the jobs to be compared have a 'common core' of tasks, *i.e.,* whether a significant portion of the two jobs is identical. The inquiry then turns to whether the differing or additional tasks make the work substantially different." Brobst v. Columbus Servs. Int'l, 761 F.2d 148, 156 (3d

judgment.

Cir. 1985).  YWCA created Kennedy's position as an accounts payable/payroll specialist due to the organization's specific need for someone to transition YWCA from a paper system to a computerized system.  Accordingly, Kennedy's responsibilities included getting the system up and running, streamlining it with other systems, and training supervisors and subordinates, as well as processing payroll.  A certain level of skill and experience with computerized payroll systems was therefore necessary to perform the responsibilities of Kennedy's position.

Rhoades, on the other hand, was hired as an accountant, as there was no longer a need for the specialist position after Kennedy's departure.  Rhoades's responsibilities overlapped with Kennedy's in that she was responsible for supervising the payroll process and ultimately spent the majority of her time processing payroll.  However, Kennedy's position required a greater understanding of the computerized system than what was required to merely process payroll because he was expected to implement the system and train others on its use.  Accordingly, Kennedy and Rhoades did not perform equal work.[2]  See Cullen v. Ind. Univ. Bd. of Trs., 338 F.3d 693, 699 (7th Cir. 2003) (in considering whether work is equal a court must consider, among other things, whether the positions in question require the same level of skill); see also 29 C.F.R. § 1620.15(a) (skill "must be measured in terms of the performance requirements of the job").

As for Meyers, assuming that he is an appropriate comparator to Rhoades, no

---

[2] Because we conclude that Kennedy is not an appropriate comparator, we need not determine whether appellees have established that the pay differential between

reasonable jury could conclude that he was paid more because of his sex. Between Rhoades's termination and Meyers's application, YWCA increased the salary for the accountant position based on a study which indicated that the market rate for similar positions was approximately $40,000. Additionally, Meyers had requested a starting salary between $35,000 and $40,000. Accordingly, YWCA offered Meyers $38,000 based on the study results, his requested salary, and due to his experience, specifically his seven years of prior employment as an accountant with a large non-profit company, which YWCA hoped meant that he could perform at a higher level than Rhoades had as YWCA's accountant.[3] Those are valid, non-sex-based reasons justifying the salary differential between Meyers and Rhoades, and since there is no evidence of pretext, Rhoades cannot establish an Equal Pay Act violation based on Meyers. See Balmer v. HCA, Inc., 423 F.3d 606, 612 (6th Cir. 2005) ("A wage differential based on education or experience is a factor other than sex for purposes of the Equal Pay Act."); Horner v. Mary Inst., 613 F.2d 706, 714 (8th Cir. 1980) (concluding that differential pay was based on factor other than sex when "[the male's] experience and ability made him the best person available for the job and because a higher salary was necessary to hire him").

As no reasonably jury would believe that Meyers was paid more than Rhoades because of his sex, and because Kennedy and Rhoades did not perform equal work, we

Kennedy and Rhoades was based on a factor other than sex.

[3] It is worth noting that YWCA offered Rhoades $33,000 – more than the salary of $28,000 to $31,000 that she was willing to work for – to fairly compensate her for the market value of her work in accordance with the study results YWCA used to

will affirm the grant of summary judgment to appellees on Rhoades's Equal Pay Act claim.

B. Retaliation

We will also affirm the grant of summary judgment on Rhoades's retaliation claim. "[T]o establish a *prima facie* case of illegal retaliation . . . a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 759 (3d Cir. 2004) (quotations omitted). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for its actions. Moore v. City of Phila., 461 F.3d 331, 342 (3d Cir. 2006). Thereafter, "to defeat summary judgment . . . , the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

Assuming, arguendo, that Rhoades established a prima facie case, we agree with the District Court that she lacks sufficient evidence of pretext to survive summary judgment. Appellees proffered a legitimate, non-discriminatory reason for Rhoades's

fashion the salary range for the position.

poor evaluations and ultimate termination, namely, her unsatisfactory job performance.

Rhoades contends that her performance review and PIP contain several "false

accusations" manufactured by Manning with retaliatory animus in order to set her up for

termination. However, contrary to Rhoades's assertions, the record contains emails and

other documentary evidence reflecting her inability to manage her workload, review the

work of her subordinates to prevent error, and complete tasks in a timely manner, which

support many of the negative comments contained in the annual evaluation and PIP.

Furthermore, Rhoades never completed the goals identified in the six-month

review, which were consistent with the responsibilities of her job, even after Manning

extended the deadlines to complete those tasks. At most, Rhoades adduced evidence that,

when viewed in her favor, establishes that Manning exaggerated the extent of Rhoades's

attendance issues, that certain criticisms contained in the evaluation could be considered

harsh, that turnover in the department may have contributed to Rhoades's inability to

train a subordinate to take over payroll functions (one of the listed goals), and that

Rhoades believed that she was working as hard as she could to tackle what she

considered to be a full workload. That, however, does not sufficiently undermine the

clear evidence that Rhoades did not satisfactorily perform the core components of her job

such that a jury could disbelieve that she was terminated for that reason. See Fuentes, 32

F.3d at 765 (a plaintiff must "demonstrate such weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate

reasons for its action that a reasonable factfinder *could* rationally find them unworthy of

11

credence") (quotations omitted). Accordingly, appellees are entitled to summary judgment on Rhoades's retaliation claim.

For the foregoing reasons, we will affirm the District Court's order granting summary judgment to the appellees.