NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-2886
_____

CATHALENE JOHNSON,
                                        Appellant

v.

FEDERAL EXPRESS CORPORATION
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-12-cv-00444)
District Judge:  Honorable Christopher C. Conner
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 19, 2015

Before:   SMITH, JORDAN, and SLOVITER, *Circuit Judges*.

(Filed: March 20, 2015)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

        Appellant Cathalene Johnson appeals from an order of the United States District

Court for the Middle District of Pennsylvania entering summary judgment against her on

---

        * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

a claim she asserts under the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d). She argues

that the facts establish that her former employer, Federal Express Corporation ("FedEx"),

paid her and a male comparator at different rates for work performed on jobs involving

substantially similar work. Her argument is unpersuasive and, indeed, summary

judgment was properly entered against her. We will affirm.

## I.    Background[1]

### A.    Employment at FedEx

Johnson, an African-American woman, was hired by FedEx on November 7, 1988.

In 1996, she transferred to FedEx's York, Pennsylvania station where she worked as a

courier. Later, she voluntarily "down-bid" into a full-time position as a Senior Service

Agent ("SSA"), which is where she remained until she resigned on June 17, 2013. SSAs

are paid at a lower salary rate than couriers. For purposes of her EPA claim, Johnson

used Craig Pooler, a Caucasian man, as her comparator. Johnson alleged that she and

Pooler performed substantially identical work but that Pooler was paid more.

Pooler's job title is Courier/DOT/CDL, meaning that he is a courier with a

commercial driver's license who is certified by the Department of Transportation to

operate a commercial motor vehicle. During the relevant time period, Pooler possessed a

"Class B" commercial driver's license, which permitted him to operate vehicles that have

---

[1] This background includes facts presented at summary judgment as well as facts developed at trial. For purposes of reviewing the District Court's entry of summary judgment, we have focused primarily on the record that existed at that stage of litigation. *But see infra* note 8.

a gross vehicle weight rating of greater than 26,000 pounds.[2]  He also had a hazardous material endorsement on his commercial driver's license, which permitted him to transport hazardous materials.[3]  Pooler began working for FedEx in 1981 and is the most senior courier at the York station.  Due to his experience as a courier in the York area who had run every route out of the station, Pooler was able to assist other couriers in anticipating traffic patterns and properly timing parcel deliveries.  In contrast, Johnson never had a Class B commercial driver's license and was not qualified to drive any FedEx vehicles during the relevant time period.

According to Johnson, Pooler applied for and received a service agent position as a Service Assurance Leader ("SAL") in 1997.[4]  She said that, at that time, FedEx's rules permitted a higher-paid employee, such as a courier, to accept a temporary assignment as an SAL in order to meet station needs and retain higher pay.[5]  She also said that Pooler has remained in the SAL position since 1997 but has been paid at the higher courier rate, even though FedEx's internal rules do not permit such an arrangement.  Kathy Howell, a

---

[2] Pooler stated that there are only six couriers at FedEx's York station who have a Class B commercial driver's license.  He also stated that, to retain his Class B license, he was required to be tested on air brakes every four years, submit to a criminal background check, and submit to random drug testing.

[3] Larry Bizzell, a FedEx employee specializing in corporate safety, stated that, to obtain a hazardous material endorsement, Pooler was required to undergo additional training and submit to a background check.

[4] Johnson presented evidence that Pooler performed many of an SAL's responsibilities and was even referred to as an SAL by certain FedEx employees.

[5] According to Johnson, FedEx issued an order in 2001 stating that it would no longer permit couriers to work indefinitely on assignments as SALs.  As a result, SALs were required to either down-bid to an SAA or return to the road as a courier.  Pooler was apparently never required to down-bid.

3

Manager of Compensation at FedEx, stated that Pooler has never been classified as a service agent. Instead, he has only been classified as a Courier/DOT/CDL.

FedEx's Human Resources Manager, Nancy Harthun-Goard, stated that the main differences between service agent and courier job descriptions are that couriers must adhere to federally dictated licensing requirements and also that couriers are permitted to operate FedEx commercial vehicles outside and inside FedEx stations. Pursuant to the Courier/DOT/CDL job description, a courier's duty is to deliver packages, but a courier also has the responsibility to perform all other related duties as assigned by the station management. In contrast, a service agent's responsibilities include, but are not limited to, providing customer service over the phone and over the counter, performing cash and credit transactions, maintaining inventory of customer materials, generating various reports for management, and preparing documentation and manifests for freight. No service agent, regardless of type, may drive commercial vehicles for FedEx. Service agent positions such as SSAs and SALs share many of the same responsibilities with one another and share the same pay rate.

During the relevant time period, Pooler operated a FedEx commercial vehicle multiple times per week. While he did not perform the duties of a full-time courier, he performed route protection, which means that he would perform deliveries to minimize other couriers' late deliveries. Pooler would also pick up packages according to customer demands, make bulk deliveries, deliver spare trucks to stranded couriers, take expedited deliveries to couriers, fill in for terminated or ill couriers, deliver spare PowerPads (handheld tracking devices) to couriers on the road, and handle and deliver freight that

4

arrived after the responsible drivers had departed the station.  Many FedEx employees stated that they recalled Pooler operating FedEx vehicles on a regular basis.  In contrast, Johnson never drove a truck during the relevant time period.

As mentioned above, Johnson alleged that she and Pooler performed substantially identical work but that Pooler was paid more.  Again, as noted, under FedEx's compensation structure, couriers are paid at a higher hourly rate than service agents.  While Management at the York station does not determine compensation for different positions at FedEx, Johnson said that it can affect compensation by manipulating employees' job designations, *i.e.*, courier or service agent.  Prior to her resignation, Johnson earned $22.16 per hour, which is the maximum hourly rate for her pay grade.  In comparison, Pooler earned $24.38 per hour.  In addition, Pooler enjoyed unlimited overtime hours as a courier, which permitted him to earn substantially more than Johnson even though their hourly wages were comparable.  Johnson claims that by virtue of his employee designation, Pooler was able to accrue significant amounts of overtime even when he performed non-courier functions, such as those of a service agent.  The parties agree that in 2011, Johnson was paid $43,153.07 while Pooler was paid $63,804.17.  Similar pay discrepancies existed between Johnson and Pooler in 2008, 2009, 2010, and 2012.

B.    **Procedural History**

On May 2, 2011, Johnson filed a charge of discrimination with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission.  Later, she timely filed suit in federal court alleging race and sex

5

discrimination in violation of (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; (2) 42 U.S.C. § 1981; (3) the EPA; and (4) the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. § 951 *et seq.* Johnson filed a motion for summary judgment on her EPA claim, which the District Court denied. FedEx moved for summary judgment on Johnson's EPA and other race discrimination claims, which the District Court granted in part and denied in part. Specifically, the District Court granted FedEx's motion as to portions of Johnson's race discrimination claims that were barred by the statute of limitations and as to her EPA claim, finding that Pooler's and Johnson's employment positions and responsibilities were unequal. But the District Court denied FedEx's motion as to all of Johnson's remaining claims. Trial on the remaining race and sex discrimination claims commenced on May 12, 2014, and the jury returned a verdict for FedEx a week later. The District Court promptly entered judgment in FedEx's favor. Johnson then appealed the District Court's order denying her motion for summary judgment and granting FedEx's motion for summary judgment as to the EPA claim, but she does not challenge the jury's determination as to her other claims.

## II.    Discussion[6]

Johnson argues that the facts "establish conclusively" that FedEx paid her and Pooler at different rates for work performed on "jobs involving substantially similar work," and that she is therefore entitled to summary judgment on her EPA claim. She also of course argues that the grant of summary judgment for FedEx was in error. (Opening Br. at 32.) She is mistaken on both points.[7]

---

[6] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We review a District Court's grant of summary judgment *de novo*, *Alcoa, Inc. v. United States*, 509 F.3d 173, 175 (3d Cir. 2007), and must view the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences and resolving all doubts in favor of that party, *Doe v. Cnty. of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[7] FedEx argues that we lack jurisdiction to review the denial of summary judgment on Johnson's EPA claim. Relying on *Ortiz v. Jordan*, 562 U.S. 180 (2011), FedEx argues that the District Court's entry of summary judgment was not a "final decision" subject to appeal and that Johnson's failure to file motions under Federal Rule of Civil Procedure 50(a) and (b) during and after trial waived her right to appeal. (Response Br. at 35-38.) That argument is flawed. This case is easily distinguishable from *Ortiz*, in which a motion for summary judgment based on the defense of qualified immunity was *denied* and the plaintiff's claim went to trial. *Ortiz*, 562 U.S. at 183. In *Ortiz*, the Supreme Court held that the defendants' failure to file a motion under Rule 50(b) rendered the appellate court "powerless" to review their defense of qualified immunity. *Id.* at 189 (internal quotation marks omitted). Here, a motion for summary judgment was *granted* on the claim now before us. Because judgment was entered against Johnson on her EPA claim and that claim was never presented to the jury, she had no reason to move for a directed verdict or for judgment notwithstanding the verdict on her EPA claim. We plainly do have jurisdiction to hear Johnson's appeal.

Claims based on the EPA are evaluated according to a two-step burden-shifting paradigm. "The plaintiff must first establish a prima facie case by demonstrating that employees of the opposite sex were paid differently for performing 'equal work' – work of substantially equal skill, effort and responsibility, under similar working conditions." *Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000). To determine whether two jobs involve equal work, we must determine whether "a significant portion of the two jobs is identical." *Brobst v. Columbus Servs. Int'l*, 761 F.2d 148, 155, 156 (3d Cir. 1985). "The inquiry then turns to whether … differing or additional tasks make the work substantially different." *Id*. If the plaintiff establishes her prima facie case, "[t]he burden of *persuasion* then shifts to the *employer* to demonstrate the applicability of one of the four affirmative defenses specified in the [EPA]," which include "(i) a bona fide seniority system, (ii) a merit system, (iii) a system which measures earnings by quantity or quality of production, or (iv) a differential based on any factor other than sex." *Stanziale*, 200 F.3d at 107 & n.6 (emphasis in original). "[I]n order to prevail at the summary judgment stage, the employer must prove at least one affirmative defense so clearly that no rational jury could find to the contrary." *Id*. at 107 (internal quotation marks omitted).

After reviewing the evidence submitted at the summary judgment stage, the District Court held that Johnson had failed to establish a prima facie case because she and Pooler did not perform equal work at the York station. Specifically, while the District Court acknowledged that a significant portion of Johnson's and Pooler's duties at the York station were similar, it found that Pooler maintained greater qualifications than Johnson and that he performed duties as a courier that required skills beyond those

8

exercised by Johnson as a service agent. We agree with the District Court that the record presented at the summary judgment stage warranted entry of judgment in favor of FedEx on the EPA claim. Furthermore, while not essential to our holding, it is noteworthy that the record developed at trial bolsters the District Court's conclusion that Pooler and Johnson did not perform equal work.[8]

### III. Conclusion

For the reasons noted, we will affirm the judgment of the District Court.

---

[8] Even if the record extant at the summary judgment stage were, as Johnson argues, insufficient to support the entry of judgment for FedEx, it is abundantly clear from the record developed at trial that her EPA claim cannot survive. And Johnson herself saw the trial record as a basis to consider the EPA claim because she moved to reopen her EPA claim at the close of evidence. *See* App. 5 at 170 (Johnson moving "to reopen … [her] Equal Pay Act claim, because [she] believe[d] that the evidence presented at … trial would support that being given to the jury"). Thus, even if the summary judgment ruling were precipitous, judgment on this claim as a matter of law would be appropriate on the fully developed record. *Blunt v. Lower Merion School Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) ("[W]e may affirm the District Court on any grounds supported by the record, even if the court did not rely on those grounds." (internal quotation marks omitted)).