**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 15-2358

_____

DEBRA A. STEELE,
Appellant

v.

PELMOR LABORATORIES INC.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-14-cv-05340)
District Judge: Hon. Legrome D. Davis

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 3, 2016

Before: JORDAN, GREENBERG, and SCIRICA, *Circuit Judges*.

(Opinion Filed: March 4, 2016)

_____

OPINION*

_____

JORDAN, *Circuit Judge*.

Debra A. Steele appeals from an order of the United States District Court for the

Eastern District of Pennsylvania granting summary judgment against her and in favor of

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

her employer, Pelmor Laboratories, Inc. ("Pelmor"). Steele brought two claims against Pelmor: first, that Pelmor discriminated against her on the basis of her sex because it did not consider her for a promotion, in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act ("PHRA"); and second, that Pelmor violated the Equal Pay Act by failing to pay her the same as a male colleague who did receive that promotion. Because the District Court properly granted summary judgment, we will affirm.

## I. BACKGROUND

### A. Factual Background[1]

Pelmor manufactures rubber parts for the aerospace, computer, and medical device industries, employing roughly thirty people. Steele was hired in 1991 for the position of a "trimmer/inspector" at a wage of $7.35 per hour. Throughout her years at Pelmor, she has risen through the ranks. After spending nine years in the trimming department (where she was promoted twice), Steele was promoted to the supervisory position of production manager in 2000. She continues in that role to this day, and makes $67,000 per year. Although she dropped out of high school after the ninth grade,[2] she has

---

[1] As we are obligated to do in reviewing a motion for summary judgment, we recount the facts in the light most favorable to Steele, the non-moving party. *Frank C. Pollara Grp., LLC v. Ocean View Inv. Holding, LLC*, 784 F.3d 177, 179 n.1 (3d Cir. 2015).

[2] While Steele testified in her deposition that she dropped out of high school after completing the ninth grade, in her 1991 job application she indicated that she had completed the tenth grade. We credit her recent testimony.

attended many training programs and she succeeded in obtaining a General Educational Development ("GED") certificate.

As production manager, Steele's responsibilities include (in her words) "mak[ing] sure production [is] running efficiently and smoothly." (App. at 279a.) She supervises various departments at Pelmor, including the molding, trimming, extrusion, and paint departments, and she ensures that the employees in those departments have the materials they need to complete their assigned projects. Her duties are primarily administrative: she prepares work schedules, documents customer delivery needs, and orders any components that might be missing from Pelmor's inventory, all with the ultimate goal of "coordinat[ing] everything to meet the customer delivery date." (App. at 283a.)

In June of 2012, Pelmor hired Michael Wuensche – the employee who would eventually receive the promotion that Steele wanted – to work as its Controller. Wuensche graduated from college in 1980 with a Bachelor of Science degree "in commerce with a major in accounting." (App. at 518a.) Thereafter, he obtained a master's degree in business administration from La Salle University with a concentration in finance. Prior to joining Pelmor, Wuensche had years of experience in finance, accounting, and management. He had also started his own company, consulted for a number of companies, and, in the job he had just before joining Pelmor, worked as the chief financial officer of a company that imported and distributed medical uniforms. As Controller at Pelmor, Wuensche was responsible for the daily management of the accounting department. He was hired by the President of the company, James Ross.

Steele's immediate supervisor, the company's Vice President of Operations ("VP"), resigned in August 2012. With the VP position vacant, Ross took over the responsibilities of the position. He testified that, at the time the VP position was vacated, he had no intention to hire an external candidate to fill the job. That was consistent with the typical hiring practice at Pelmor. When promoting to supervisory or management positions, Pelmor generally looked within the company. Those internal hiring decisions were usually made without posting or advertising the open position. Pelmor's human resources manager testified that, since she joined the company in 1994, only a single position had been advertised on an internal bulletin board. In fact, Steele came to occupy her position as production manager without any notification to employees that there was an available management position and that anyone who was interested could apply.

Steele testified that Ross told her there would be no replacement hired for the VP position. But she suspected otherwise. In July 2013, she thought that Wuensche was under consideration for the VP position because he began to get more involved in production issues. In Steele's words, Wuensche had started to "tell [her] how to do things." (App. at 308a.) Her suspicions were so strong that, on July 25, 2013, Steele went to the EEOC with the intention of filing a discrimination charge because she felt she was being overlooked for the VP position. At that time, Steele was told that she did not have enough information to support a claim of discrimination. Although Steele suspected that Ross was considering putting Wuensche in the job, and even though she went so far as to approach the EEOC about filing a discrimination charge, she never conveyed her interest in the VP position to Ross or anyone else at the company.

4

Steele's suspicions proved correct. Pelmor promoted Wuensche to the VP position effective November 12, 2013. As president of the company, Ross made the decision. Ross testified that he compared Wuensche to the other possible candidates "in [his] head" and determined that he was the best qualified. (App. at 492a.) He opted against an external search because he did not want the expense of the search process through a recruiter. Ross had worked very closely with Wuensche since hiring him, and Wuensche had demonstrated "his ability to learn very quickly, his high level of energy, his passion for the industry and his overall strategic thinking … ." (App. at 491a.) Although Ross briefly considered Steele for the job, he concluded that she did not possess the necessary skill set – "[h]er communication skills, her managerial skills, her work experience, her background, primarily." (App. at 493a.) Ross also specified that he "wanted someone with more of an educational background," though he noted that Steele's limited education alone did not foreclose her chance at the promotion. (App. at 495a.) Ross expressed concern that Steele lacked the ability "to strategically think about the company and the business and the industry we play in," particularly because her current role was "sort of micro level" while he was looking for "more of a macro thinker." (App. at 494a.) He described Steele's overall job performance as "below average" (App. at 493a), but not "poor enough to warrant her being terminated" (App. at 495a).[3]

---

[3] Pelmor's human resources manager testified that Steele performed "adequate[ly]" until Wuensche made certain changes to her position. (App. at 358a.) For his part, Wuensche described Steele's work as "[m]arginal" and "[n]ot to the standard … that warrants advancement within the organization." (App. at 522a.)

Upon his promotion, Wuensche received an increase in salary. When he started at Controller he made $80,000 per year. At the time of his deposition, he made $115,000 per year. In his current role as VP, Wuensche continues to perform the job responsibilities of the Controller and now also works as Steele's immediate supervisor.

## B.    Procedural Background

Steele returned to the EEOC and was issued a right to sue letter. She then filed her complaint against Pelmor, alleging that she was denied the promotion because of her sex, in violation of Title VII of the Civil Rights Act of 1964 and the PHRA. She also claims that Pelmor violated the Equal Pay Act because its "employees of the opposite sex were paid differently for performing 'equal work' or work of substantially equal skill, effort and responsibility, under similar working conditions." (App. at 31a.) After a period of discovery, Pelmor moved for summary judgment, which the District Court granted. This timely appeal followed.

## II.    DISCUSSION[4]

We exercise plenary review over a grant of summary judgment and, like the District Court, must draw all reasonable inferences in favor of the non-moving party. *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 451 (3d Cir. 2006). Summary judgment is only appropriate if Pelmor can establish that "there is no genuine dispute as to any material fact" and it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[4] The District Court had jurisdiction under 28 U.S.C. § 1331. We exercise jurisdiction pursuant to 28 U.S.C. § 1291.

### A. Steele's Sex Discrimination Claim

Steele alleges that Pelmor violated Title VII and the PHRA in discriminating against her on the basis of sex when it promoted Wuensche instead of her. Although she relies on two distinct statutory bases, we consider her claims of sex discrimination together under the same standard, as "[c]laims under the PHRA are interpreted coextensively with Title VII claims." *Atkinson*, 460 F.3d at 454 n.6.

Title VII prohibits employers from discriminating on the basis of sex in their hiring decisions. *See* 42 U.S.C. § 2000e-2(a). To prevail on a Title VII claim, Steele must satisfy the familiar burden-shifting inquiry under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). That inquiry proceeds in three steps. First, Steele must establish a prima facie case of sex discrimination in Pelmor's decision to not promote her. To do so, she must show that "(a) she was a member of a protected class, (b) she was qualified for the [position] to which she applied, and (c) another, not in the protected class, was treated more favorably." *Scheidemantle v. Slippery Rock University State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006). If she succeeds in meeting those elements, the second step of the *McDonnell Douglas* framework shifts the burden of production to Pelmor to establish a legitimate, non-discriminatory reason for its failure to promote her. *Id*. If it can do so, the third step requires that Steele show that the proffered reason is a mere pretext for sex discrimination. *Id*. Although the burden of production shifts, the employee always has the ultimate burden of persuasion to prove discrimination. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999).

7

The District Court held that Steele had satisfied the elements of a prima facie case and, in its briefing here, Pelmor does not challenge that conclusion. Similarly, Steele does not dispute that Pelmor proffered a non-discriminatory reason for its decision to promote Wuensche, namely that Wuensche was better qualified for the position. Given the lack of any dispute at the initial two steps of the inquiry, we proceed directly to consideration of whether Steele has met her burden to show that Pelmor's stated reason for its promotion decision – Wuensche's superior qualifications – was a pretext for sex discrimination.

To establish pretext, and thus defeat summary judgment when an employer has responded with a non-discriminatory reason for its decision, the employee "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). Because the employee must demonstrate that the employer was motivated by a discriminatory animus, it is not enough to show that the employer's decision was "wrong or mistaken." *Id*. at 765. Instead, the employee has the burden to "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence." *Id*. (internal quotation marks omitted).

Steele advances two arguments in her effort to demonstrate pretext. She first contends that she has provided "statistical evidence of pretext." (Opening Br. at 18.) The

8

evidence she cites is the single fact that the VPs at Pelmor – there have been three over time – have been men. She contends that a "population of three" is "certainly significant in a smaller company with less than formal hiring practices." (Opening Br. at 18.)

Although "[s]tatistical analyses have served and will continue to serve an important role as one indirect indicator" of discrimination, *Mayor of City of Phila. v. Educ. Equal. League*, 415 U.S. 605, 620 (1974), such raw numerical comparisons as Steele offers here are of limited utility, absent "any analysis of either the qualified applicant pool or the flow of qualified candidates over a relevant time period," *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 543 (3d Cir. 1992). The usefulness of statistical evidence in proving discrimination "depends on all of the surrounding facts and circumstances," *Int'l Broth. of Teamsters v. United States*, 431 U.S. 324, 340 (1977), but the record here says nothing about the facts and circumstances surrounding the hiring of the three past male Vice Presidents. Even if it did, such evidence would be of questionable strength in establishing any sort of pattern of discriminatory conduct. *See Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 995 (1988) ("[S]tatistical disparities must be sufficiently substantial that they raise such an inference of causation."). Without any evidence related to the hiring of three past Vice Presidents, particularly whether there were qualified female candidates who applied for those openings and were denied, we must reject Steele's argument that there is "statistical evidence of pretext." (Opening Br. at 18.)

Second, Steele argues that she was not given a "fair shake" because she was qualified for the position but was never given the chance to apply for it. (*Id*.) Even

9

accepting that contention as true, there is no evidence to show that the lack of a formal hiring process had anything to do with Steele's gender. The record is devoid of any direct evidence of discrimination in the promotion decision. Steele testified that she had never seen any documents to support her claim, that no one had ever told her she was denied the promotion because of her gender, and that she thus had no facts or evidence to support her claim other than her "gut feeling." (App. at 322a.) She conceded that the only basis for her claim of sex discrimination was that Wuensche is a man and she is a woman. Nor does Steele allege that her past treatment by Pelmor evidenced any discriminatory animus. Quite the contrary: Steele was hired in 1991 and has been promoted repeatedly. The record also reflects that the absence of an internal posting or advertisement of the position within the company was consistent with Pelmor's typical hiring practices. Indeed, that was how Steele herself got her last promotion.

Having reviewed her complaint, briefing, and deposition, it is apparent that Steele believes that she is better qualified than Wuensche for the job of VP at Pelmor. But that is not her decision to make. "[M]ore than a denial of promotion as a result of a dispute over qualifications must be shown to prove pretext." *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 170 (3d Cir. 1991) (internal quotation marks omitted). Even "[t]he fact that a court may think that the employer misjudged the qualifications of the applicant does not in itself expose him to Title VII liability … ." *Ezold*, 983 F.2d at 531 (internal quotation marks omitted). Rather, to demonstrate pretext, Steele must show "that the qualifications of the person actually promoted were *so much lower* than those of h[is] competitors that a reasonable factfinder could disbelieve the claim that the employer was honestly seeking

10

the best qualified candidate." *Bray v. Marriott Hotels*, 110 F.3d 986, 999 (3d Cir. 1997) (Alito, J., dissenting). In the absence of such a significant degree of difference in qualifications that may arouse a suspicion of discrimination, we defer to the employer's hiring decisions, as Title VII "was not intended to diminish traditional management prerogatives." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 259 (1981) (internal quotation marks omitted).

Steele cannot credibly claim that she is more qualified than Wuensche to the overwhelming extent required for her to prove pretext. He has a college degree and MBA; she has a high school equivalency degree. He has significant managerial experience in a variety of manufacturing contexts; she has longer experience in the company but not in high-level managerial positions. Ross testified that he compared the two of them, albeit informally, and came to the conclusion that Wuensche was better qualified for the position than Steele, given his strength as a strategic thinker, knowledge of the overall industry, and ability to learn quickly. "[A] company has the right to make business judgments on employee status, particularly when the decision involves subjective factors deemed essential to certain positions." *Ezold*, 983 F.2d at 527 (internal quotation marks omitted).

Because Steele has the ultimate burden to prove intentional discrimination, *Jones*, 198 F.3d at 410, her "gut feeling" cannot substitute for actual evidence. (App. at 322a.) Accordingly, the District Court properly granted summary judgment in favor of Pelmor on her claims of sex discrimination under Title VII and the PHRA.

11

## B.     Steele's Equal Pay Act Claim

Steele next alleges that Pelmor violated the Equal Pay Act by paying Wuensche more than her.  The Equal Pay Act prohibits gender-based discrimination in rates of pay to employees, requiring equal pay for equal work.[5]  Claims under the Equal Pay Act

> follow a two-step burden-shifting paradigm.  The plaintiff must first establish a prima facie case by demonstrating that employees of the opposite sex were paid differently for performing "equal work" – work of substantially equal skill, effort and responsibility, under similar working conditions.  The burden of *persuasion* then shifts to the *employer* to demonstrate the applicability of one of the four affirmative defenses specified in the Act.

*Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000) (internal citation omitted).

The District Court granted summary judgment in favor of Pelmor because it concluded that Wuensche and Steele do not perform substantially equal work.  We agree.  "The crucial finding on the equal work issue is whether the jobs to be compared have a 'common core' of tasks, *i.e.*, whether a significant portion of the two jobs is identical."  *Brobst v. Columbus Servs. Int'l*, 761 F.2d 148, 156 (3d Cir. 1985).  Factors to be considered in determining whether tasks are similar include whether they require similar

---

[5] The text of the Equal Pay Act provides, in pertinent part:

> No employer ... shall discriminate ... between employees on the basis of sex by paying wages to employees ... at a rate less than the rate at which he pays wages to employees of the opposite sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex ... .

29 U.S.C. § 206(d).

quality and quantity of production, education, relevant prior work experience, conduct, and skill. 29 C.F.R. § 1620.13. Steele testified during her deposition that she is the only person at Pelmor who does the tasks that she does. She supervises different employees than Wuensche, works a different shift, and is responsible for a unique part of the company's operations. The fact that Wuensche may step in and perform Steele's duties when she is sick or on vacation does not indicate a substantial overlap in their job responsibilities. Wuensche is Steele's immediate supervisor. In his words, he has "direct management of the managers." (App. at 521a.) He also continues to perform the duties of his prior position as Controller, running the accounting department.

Steele had the benefit of significant discovery – she deposed the company president, human resources manager, and Wuensche himself. That testimony has revealed, essentially, that Wuensche is Steele's boss. And it is not discriminatory for Pelmor to pay Steele less than her boss. Given the dissimilarity in their job responsibilities, Steele cannot make a prima facie case under the Equal Pay Act, and the District Court properly granted summary judgment in favor of Pelmor.[6]

III. CONCLUSION

For the foregoing reasons, we will affirm.

---

[6] Although Steele also suggests in her complaint that Pelmor retaliated against her after she filed her EEOC complaint by giving her negative performance reviews – thus (at least impliedly) raising a retaliation claim – she has advanced no argument concerning retaliation before this Court. Thus, any such claim is deemed waived. *See Albrecht v. Horn*, 485 F.3d 103, 113 n.3 (3d Cir. 2007) ("An issue that is not discussed in the briefs is waived.").